IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No.  09-cv-00576-RPM

STEVEN J. COX,

     Plaintiff,

v.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,

     Defendant.

---

## MEMORANDUM DECISION

---

On August 8, 2008, Prudential approved Steven Cox's claim for long term disability

benefits, effective August 8, 2008, through September 30, 2008.  R. 1180-1181.  Mr. Cox had

applied for disability benefits in May, 2008, based on a claim of uncontrolled seizure disorder

based on an Attending Physician Statement of Dr. Jennifer Hronkin, a Kaiser Permanente

Family Medicine Physician.

Mr.  Cox was a 20-year employee of Coors Brewing Company and was severely

addicted to alcohol, consuming as much as a case of beer each day.  He had sustained multiple

seizures, including an on-the-job seizure on March 23, 2008, while working as a sandblast

furnace operator.  Because that position required him to operate heavy machinery and

frequently climb heights, the employer determined that he was unsafe on the job and ultimately

terminated him from employment in August, 2008.  On September 23, 2008, Prudential notified

Mr. Cox that because his last seizure was on March 23, 2008, and because a treating

physician, Dr. Hronkin, had informed that he could return to work on July 16, 2008, having been

seizure free for six months, his disability benefits would not be continued beyond September 30, 2008.  R. 1172.

That reference to Dr. Jennifer Hronkin is to the notation of the claims adjuster, Julle Chretien of a telephone conversation with Dr. Hronkin on September 3, 2008, in which she said that she expected him to be able to return to work in July, 2008, if he stayed on prescribed medications.  R. 927.

On September 30, 2008, Prudential sent another letter to Mr. Cox, saying that additional information from medical records of Dr. Jeong indicated that Mr. Cox had been seizure free.

The claimant's wife submitted an appeal letter in October, informing that Mr. Cox had had a seizure in South Dakota and that the employer did not want him to return to work.  Dr. Jeong and Dr. Hronkin had no current information concerning Mr. Cox .  The insurance company then retained Dr. Varpetian, a neurologist, and Dr. Gitlow, a psychiatrist, to review the medical records.  Dr. Varpetian wrote that there was no neurological indication of any impairment and Dr. Gitlow wrote so long as the claimant remains fully abstinent, there were no restrictions or limitations on his employability.  Dr. Gitlow also wrote that appropriate treatment has only been provided to the claimant partially, opining that because alcoholism is a chronic life-long illness, an alcoholic must participate regularly in 12-step programming, see the physician regularly and be subject to laboratory screening.  He criticized weekly attendance at AA as insufficient frequency of participation and said that Mr. Cox should be attending AA at least once each day for a minimum of three months.

On November 12, 2008, Prudential relied on these reports to uphold termination of long term disability benefits.  R. 1155-1158.  The letter contained the following paragraph:

> In addition, a review of you[r] claim file reflects you have not been engaged in regular and appropriate care for your condition....  The records do not indicate that you have been advised of the necessity of total abstinence.  Regular and appropriate care would include daily attendance at least once a day at AA for a minimum of three months.  As you are attending AA once a week, you would not be considered to be engaged in regular and appropriate care and therefore, not eligible for LTD benefits.

R. 1158.

Following the denial of his administrative appeal, Mr. Cox saw Dr. Metcalf, who admitted him for hospital detoxification on December 2, 2008.  Mr. Cox was in the hospital for three days and after discharge he immediately began drinking again, resulting in another hospitalization after a seizure.  With this additional medical information, counsel for the claimant filed a second administrative appeal on January 29, 2009.  Prudential again retained Dr. Varpetian and Dr. Gitlow to review the additional records.  Dr. Gitlow wrote that after review of the hospital record showing continued use of alcohol, Mr. Cox had not taken responsibility for his illness by not stopping drinking and not participating actively in a recovery process.  Dr. Gitlow found the claimant to be noncompliant with treatment and that any psychiatric restrictions and limitations were due to continued alcohol intake.

On February 27, 2009, Prudential again upheld its decision to terminate long term disability benefits because Mr. Cox continued to drink alcohol and was not compliant with treatment recommendations.  R. 1144-1148.  That decision of Nancy Pichette, the appeals analyst, relied on that provision of the insurance policy that required the claimant to be under the regular care of a doctor and the definition of regular care as follows:

Regular care means:

- You personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat you[r] disabling conditions(s); and

- You are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling conditions(s) by a doctor whose specialty or experience is the most appropriate for you[r] disabling condition(s), according to generally accepted medical standards.

The central question presented by the plaintiff's claim for benefits under ERISA[1] is whether attendance at AA meetings is appropriate treatment and care within this policy definition.  More specifically, the question is whether Prudential's reliance on the opinion of Dr. Gitlow makes its denial decision arbitrary and capricious.  It is recognized that there is an inherent conflict of interest in that Prudential is the payor of benefits as well as the decision maker.   There are no additional factors present in this record to warrant a *de novo* review of this decision.

Dr. Gitlow's view that AA meetings are appropriate medical care is supported by the recommendation made by one of Mr. Cox's treating physicians, Dr. Graham, a Kaiser Permanente physician who was Medical Director of the Chemical Dependency Treatment Services at Kaiser, who treated Mr. Cox after a seizure in September, 2007.  Dr. Graham wrote a return-to-work verification on October 8, 2007, informing that he may resume work on October 12, 2007:

> May safely climb tall ladders, drive heavy equipment, work with industrial tools AS LONG AS HE IS ENGAGED IN AN ACTIVELY MONITORED ANTABUSE PROGRAM to assure alcohol abstinence.

---

[1]Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, *et seq.*

Continued participation in recovery programs like AA twice weekly and therapy groups at Kaiser for additional reinforcement is essential during the next 3-6 months when relapse risk to drinking is highest.

Steve will need to leave work early every other Monday afternoon in order to participate in a group treatment session at our facility at 7701 Sheridan, Westminster, from 5 p.m. to 6:15 p.m.

Steve will also need to have his antabuse dose monitored 3 days weekly 500 mg per dose.  We recommend that your employee health program develop a plan for that monitoring.

R. 1015.

While the question of the effectiveness of AA may be debatable within the medical community, it is beyond the function of this Court in an ERISA action to make that judgment.

In addition to the failure to attend AA meetings, Mr. Cox was repeatedly prescribed Antabuse and Dilantin and has not been compliant with those prescribed medications.

Essentially, the position of plaintiff in this case is that alcoholism of the severity of the plaintiff is in itself an incurable illness and no medical treatment can keep him from drinking. There is no support for that view in the medical record submitted to the defendant.

The plaintiff also suggests that Prudential did not comply with the regulation at 29 C.F.R. Part 2560.503-1(h)(3) governing appeals of adverse decisions in group health plans.  That provision requires consultation with a health care professional with appropriate training and experience in the field of medicine involved and states that the consultant not be consulted in connection with the initial adverse benefit determination on appeal.  There does appear to be a technical violation of that provision in that the consultation was with Dr. Gitlow, the same psychiatrist who had provided an opinion earlier.  There is, however, no indication that Dr. Gitlow did not have the required qualifications to make his judgment as to the appropriateness

5

of the attendance at AA meetings and this violation does not alter the standard of review.

Upon the finding and conclusion that the decision denying long term disability benefits to Mr. Cox was not arbitrary and capricious or contrary to law, it is now

ORDERED that judgment will enter for the defendant dismissing this civil action and for the award of statutory costs.

Dated:   January 19th, 2010

BY THE COURT:

s/Richard P. Matsch

_____

Richard P. Matsch, Senior District Judge